UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-229 (ECT/DJF)

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                        **GOVERNMENT'S MOTION FOR
PRETRIAL DETENTION**

BRENDON MICHAEL DAUGHERTY,

        Defendant.

      The United States of America, by and through its attorneys, Andrew M. Luger,

United States Attorney for the District of Minnesota, and Kimberly A. Svendsen, Assistant

United States Attorney, hereby moves the Court to order defendant Brendon Michael

Daugherty detained pending trial in this matter.

      Daugherty is charged with threatening to murder a U.S. Senator and with interstate

transmission of a threat to injure the person of another.  His criminal history includes a

prior felony terroristic threats conviction for threatening the employees of a Pearle Vision

store, as well as convictions for such other crimes as second degree aggravated robbery,

theft of a controlled substance, fifth degree assault, felony financial transaction card fraud,

and first degree burglary.  In addition to his prior convictions, law enforcement investigated

Daugherty for making another threat to blow up eBay headquarters in 2018 and warned

him that making future threats could land him in jail.  Daugherty's threatening conduct

continued through the time of his arrest and transport to the courthouse last Friday,

September 16, and even in the courtroom while he was waiting for his initial appearance

to begin.

In addition to posing a danger to the community, Daugherty's criminal history reflects at least eleven failures to appear in court, most recently on July 5, 2022 in a disorderly conduct case that is currently pending in Anoka County.  In addition to his failures to appear, Daugherty routinely violates the terms of his probation, and he was on probation when he committed his previous terroristic threats offense.  Because the government can establish that no condition or combination of conditions would reasonably assure the safety of the community or Daugherty's appearance in court, the government respectfully requests that the Court order Daugherty detained pending trial.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Brendon Michael Daugherty is charged by indictment with Threatening to Murder a United States Official, in violation of 18 U.S.C. § 115(a)(1)(B), and Interstate Transmission of a Threat to Injure the Person of Another, in violation of 18 U.S.C. § 875(c).  On or about June 11, 2022, Daugherty made two telephone calls to the field office of Victim A—a United States Senator representing a state outside the State and District of Minnesota.  At approximately 9:56 a.m. Eastern Daylight Time, Daugherty left the following voicemail message for Victim A: "[Victim A], this is someone that's not in your constituency, but I'm just letting you know.  You and the Republican Party should be proud that you're pushing me to become a domestic terrorist.  Have a nice fuckin' day; can't wait to kill ya."  (Gov't Ex. 1.)[1]

---

[1] At the detention hearing, the government intends to offer into evidence recordings of the two voicemails Daugherty left for Victim A on June 11, 2022 and selected police reports related to encounters between Daugherty and law enforcement between 2018 and the present.  *See* 18 U.S.C. § 3142(f) ("The rules concerning admissibility of evidence in

Immediately thereafter, Daugherty called back and left a second voicemail message for Victim A: "I also just wanted to note, thank god the Republican Party is against gun control laws because it would keep guns out of the hands of a person that was disabled and volatile like I am, but you guys are totally against that. So I may actually get to carry out my nefarious goals." (Gov't Ex. 2.)

Investigation revealed that upon retrieving Daugherty's voicemail messages, Victim A's field office staff were concerned. Although Victim A's field office frequently receives messages from angry constituents, these calls stood out because of Daugherty's direct reference to killing Victim A. Unlike ordinary angry voicemails received by the field office, staff were concerned about Daugherty taking future action because of the directness and tone of the emails. Therefore, as soon as they heard the voicemails, staff recorded them and reported them to senior staff, who reported the voicemails to U.S. Capitol Police.

On September 2, 2022, two Special Agents with the Federal Bureau of Investigation spoke to Daugherty at his residence in Coon Rapids, Minnesota in a recorded interview. During the interview, Daugherty admitted that he made the calls to Victim A's office, though he took the position that he did realize he made a threat or intend to carry out any threats. Among other statements, Daugherty said that he made the calls because Victim A

---

criminal trials do not apply to the presentation of information at the [detention] hearing."); Fed. R. Evid. 1101(d)(3) (Federal Rules of Evidence do not apply to proceedings such as "granting or revoking probation or supervised release" and "considering whether to release on bail or otherwise"). The government has provided copies of these materials to defense counsel.

was "doing a bunch of stupid shit with gun control," and that he wants politicians to "feel a little bit pressured."

Daugherty's criminal history, as set forth in the bond report, reflects an unbroken chain of criminal convictions of varying severity from 2006, when Daugherty was 19 years old, to the present.  Among them are convictions for second degree aggravated robbery, theft of a controlled substance, fifth degree assault, felony financial transaction card fraud, first degree burglary, obstructing the legal process, and felony terroristic threats. Daugherty's terroristic threats conviction stems from an April 2018 incident in which staff at a Pearle Vision in Maple Grove notified him that he owed $80 for a pair of glasses. (Gov't Ex. 3.)  Daugherty responded by telling staff that he was going to "[expletive] you all up," and that he was going to bring a Molotov cocktail to the store. (*Id.*)  The next day, police told Daugherty not to contact the Pearle Vision anymore. (*Id.*)  That same day, the Pearle Vision received another call from Daugherty, in which he threatened to burn down the store and hurt employees. (*Id.*)

The bond report further reflects at least eleven failures to appear and a host of probation violations.  Moreover, Daugherty committed many of the crimes reflected in the bond report, including the terroristic threats involving the Pearle Vision, while he was on probation for previous convictions.

In addition to the convictions contained in the bond report, police reports reflect that Daugherty has had frequent contact with law enforcement between 2018 and the present, and those contacts often involve threatening conduct toward others.  For example, in October 2018, after he was arrested and charged with the Pearle Vision threats but before

he pled guilty, Daugherty made a call to eBay's corporate office in San Jose, California, in which he stated the following to an eBay employee: "OK I'm giving you a heads up, if I don't get my 100 dollars back I'll spend 500 dollars—300 to get to California and 200 dollars for high explosives to blow up your [expletive] building. Ok, high explosives aren't even hard to make, you know. It's ammonium nitrate and diesel fuel in proper proportions to blow a whole [expletive] half a building. And you'd get it properly." (Gov't Ex. 4.) Ebay reported the call to the FBI, and Daugherty was identified as the caller. An FBI agent made contact with Daugherty, who admitted to having made the threat in question, but denied having any ability or intention to carry it out. (*Id.*) He blamed his medical condition and stated that the eBay employee was mocking him. (*Id.*) The FBI agent admonished Daugherty that "violent threats could land him in jail in the future." (*Id.*)

Selected additional reports of Daugherty's recent contacts with law enforcement reflect threatening or aggressive behavior toward such individuals as a salesperson, Daugherty's mother, an electrician with the City of Coon Rapids, employees at a Holiday Station, and a Coon Rapids Police Officer. (Gov't Ex. 5.) During one of these incidents, Daugherty looked out the window, saw officers, and armed himself with a knife. (*Id.*)

Finally, Daugherty's conduct on the day of his arrest in this case, September 16, 2022, establishes that not even being arrested on a federal indictment was sufficient to stop his threats. During his transport to the federal courthouse, Daugherty continually made threats to hurt the FBI agents transporting him and to hurt himself. In the courtroom, while awaiting the start of his initial appearance, Daugherty turned to the case agent, pointed at him, and stated, "I'm gonna remember that face."

**ARGUMENT**

The Court shall order pretrial detention upon either (1) a clear and convincing showing that release will result in a danger to the community, or (2) a showing by a preponderance of the evidence that release will result in a serious risk of flight. *See United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

The detention statute sets forth four factors for the Court to consider in determining whether there are conditions of release that will reasonably assure the appearance of the defendant as required and the safety of any other person and the community:

(1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)    the weight of the evidence against the [defendant];

(3)    the history and characteristics of the [defendant], including –

    (A)    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B)    whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)    the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

1.      **The Nature and Circumstances of the Offense**

The charged crimes in this case involve making a direct and explicit threat to kill a sitting U.S. Senator.  Courts in several recent cases have held that making a threat to injure another person qualifies as a crime of violence under the detention statutes.  For example, the court in *United States v. Santoro*, 359 F. Supp. 3d 122 (D. Me. 2019) determined that interstate communication of a threat, in violation of 18 U.S.C. § 875(c), is a crime of violence.  The court noted that "[t]he defendant has not explained how one can threaten to injure the person of another without such a threat implying the use of violent force to do so." *Santoro*, 359 F. Supp. 3d at 128; citing *United States v. Chapman*, 866 F.3d 129, 134-35 (3d Cir. 2017) (where a mailed threat to injure someone under § 876(c) amounted to a crime of violence, consistent with cases from the Fourth, Fifth, Eighth, and Ninth Circuits). *See also United States v. Christy*, 2020 WL 2794617, at *4 (M.D. Pa. May 29, 2020) (communication of threats, including to the President, "are clearly crimes of violence under the Bail Reform Act"); *United States v. Choudhry*, 941 F. Supp. 2d 347, 351 (E.D.N.Y. 2013) (communication of threat to injure another is a crime of violence for detention purposes).

2.  **The Weight of the Evidence**

The evidence in this case is very strong.  Daugherty's phone records reflect the calls to Victim A's office came from his phone number.  The voice on the voicemails is consistent with the voice on law enforcement's recorded interview with Daugherty, in which Daugherty admitted making the calls.  Although Daugherty denied that he intended to carry out a threat, intent to carry out the threat is not a required element of either offense

with which Daugherty is charged.  *See United States v. Stevenson*, 126 F.3d 662, 664-65 (8th Cir. 1997) ("All the government had to show was that this threat was intentionally communicated, not that the threat was credible or could be immediately carried out.") (affirming § 115 conviction where victim was a federal probation officer and defendant was in jail when he mailed the threats); *see also Ivers*, 967 F.3d at 720 ("And even if Ivers never had any intention of acting on the threat, that fact is irrelevant.").  Daugherty has previously been both investigated for making threats and convicted of terroristic threats, and he knows that the threatening communications he makes are viewed by the people who receive them as threats.

Daugherty's threat against Victim A appears to fall into the heartland of true threats. In the Supreme Court's most recent major case analyzing true threats, the Court provided the following example:

> For example, an anonymous letter that says "I'm going to kill you" is "an expression of an intention to inflict loss or harm" regardless of the author's intent.  A victim who receives that letter in the mail has received a threat, even if the author believes (wrongly) that his message will be taken as a joke.

*Elonis v. United States*, 575 U.S. 723, 733 (2015).  Daugherty's statements to Victim A fall squarely into the definition of true threats, and the evidence that Daugherty made the statements is very strong.

### 3.  The History and Characteristics of the Defendant

Daugherty has a long history of criminal convictions, as well as uncharged threatening conduct, as set forth in detail above.  At the time of the charged conduct in this case, Daugherty had been off probation from his prior terroristic threats conviction for only

four months, and he was on unsupervised probation for his disorderly conduct—brawling or fighting case.

Although the government's detention motion is primarily based on the danger Daugherty poses to the community, Daugherty's criminal history also reflects failures to appear in connection with almost all of his cases. Although in those previous cases, in the aftermath of his failures to appear, warrants were executed and he was eventually brought before the court, Daugherty's prior conduct reflects that every time law enforcement has to go out and arrest him, it poses a danger to them.

Daugherty's family ties and his mental health are the only factors that could potentially weigh against detention in this case. However, although Daugherty clearly has strong ties to his parents, he also engages in threatening behavior toward them. And, although Daugherty appears to claim that his mental health causes his threatening behavior, rather than his own choices, if he is truly unable to stop making threats as a result of his medical condition, this renders Daugherty more, not less, of a danger to the community.

### 4. The Nature and Seriousness of the Danger to the Community

Daugherty poses a serious danger to the community if he is released. Certainly, his threat to kill a U.S. Senator, if carried out, would be an exceedingly serious crime. However, even if the Court does not take Daugherty at his word that he will kill Victim A, his track record over time—from his threat to harm Pearle Vision employees, to his threat to blow up eBay headquarters, to his threatening behavior toward the many different individuals reflected in the reports of his law enforcement interactions, to the threats charged in this case, to his conduct in connection with his arrest and initial appearance last

9

Friday—establishes that he will not stop making threats. Daugherty has made threats while on probation from prior convictions; he has made threats just after getting off probation from a previous threats conviction; and he has made threats while under the current federal indictment. He has shown by his conduct that no condition or combination of conditions of pretrial release is going to stop him from making more threats.

In *United States v. Capriotti*, 2021 WL 229660 (N.D. Ill. Jan. 22, 2021), the court ordered a defendant who left a threatening voicemail for a member of the U.S. House of Representatives to be detained pending trial. The facts of the *Capriotti* case are strikingly similar to the facts here. Prior to making the charged threat, the defendant in *Capriotti* had made other threatening calls. This had resulted in FBI agents going to his home and telling him "that he needed to stop making the calls in that manner and indicat[ing] that if he continued to do so, he may face charges." *Id.* at *1. Although the government did not allege that the defendant had physically harmed anyone, the court in *Capriotti* held that "the making of the threats themselves represent a harm to the community, so that without reasonable assurance that the threats themselves will stop upon release, the Court cannot issue a release order." *Id.* at *4. The court went on to explain why the danger that the defendant would make more threats established a danger to the community:

> The Court's decision depended not on whether Defendant had any intent to carry out his threats. The decision depended on the fact that the threats themselves were harmful. Threats, particularly those as explicit, graphic, and repeated as those alleged in this case, harm people. They terrorize people. They affect the safety, security and well-being of people. They induce fear. The Court's conclusion in this respect is not new at all, but the grounds for it bear repeating during these turbulent times. . . .

10

The threats as alleged in this case represent, in and of themselves, a distinct harm to the community. The Court is ordering Defendant's detention out of a concern that the risk to community safety stems from the risk that he will communicate more threats, and the government met its burden of showing, by clear and convincing evidence, that no release conditions or combination of conditions will reasonably assure the safety of the community in light of that risk.

*Id.* at *5-6.

The wide array of victims Daugherty has targeted in the past—a Senator, a Pearle Vision employee, an eBay employee—shows that his violent ideations are not simply geared toward a political issue. Rather, anything can set off his rage, down to getting a new pair of glasses. This is problematic from a safety perspective because anything in his daily life can set him off. And of course, there is no guarantee that just making a threat to murder someone will continue indefinitely to satisfy his need to lash out in anger. Even the most onerous pretrial release conditions short of detention, such as home confinement, are insufficient because making threats is a crime that Daugherty commits from home. *See United States v. Kane*, 2020 WL 1660058, at *4 (W.D. Wash. Apr. 3, 2020) (detaining cyberstalking and threats defendant, in part because "[t]he Court would not be able to effectively supervise the defendant's access to all means of digital communication— pretrial services professionals cannot be expected to follow him everywhere and determine whether he is using his own device (or someone else's device) or directing others to communicate plans to flee, or to communicate threats").

## CONCLUSION

The government respectfully requests that the Court order Daugherty detained pending trial because clear and convincing evidence establishes that Daugherty poses a

11

threat to the community and the preponderance of the evidence establishes that no conditions will reasonably assure Daugherty's appearance in court as required.

Dated: September 19, 2022                              Respectfully Submitted,

                                                      ANDREW M. LUGER
                                                      United States Attorney

                                                      */s/ Kimberly A. Svendsen*

                                                      BY:  KIMBERLY A. SVENDSEN
                                                      Assistant U.S. Attorney