UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-229 (ECT/DJF)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) **GOVERNMENT'S POSITION WITH RESPECT TO SENTENCING** |
| BRENDON MICHAEL DAUGHERTY, | ) |
| Defendant. | ) |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Kimberly A. Svendsen, Assistant United States Attorney, submits this memorandum in connection with the sentencing of defendant Brendon Michael Daugherty.

On November 1, 2022, Daugherty pled guilty to interstate transmission of a threat to injure the person of another after he left two threatening voicemails at the field office of a U.S. Senator. Daugherty's conduct was serious, particularly in the context of increasing political violence, and it reasonably caused his victim's staff to fear that Daugherty could carry it out. By the same token, Daugherty's autism spectrum disorder appears to have played a role his commission of the offense, and there is no evidence that Daugherty made any plans to carry out his threat.

Based on all of the facts and circumstances in this case, including the nature of Daugherty's offense and his mental health history, the government seeks a sentence of time served (approximately 6.25 months in Sherburne County Jail), along with 3 years'

supervised release, to include at least the following release conditions and any others recommended by the U.S. Probation Office:

- Home confinement for up to 90 days at Daugherty's parents' home, except to attend medical appointments, in order to allow time for Daugherty's treatment plan to be implemented;

- Attend mental health treatment appointments as required by Probation and follow practitioners' instructions;

- Take all prescribed medications as directed by treatment personnel; and

- Cooperate with case manager at Anoka County Human Services and follow case manager's instructions.

Although the government cannot predict the future, under the specific circumstances of this case, the government believes such a sentence to be the most likely to protect the community from future threatening conduct by Daugherty.

### Daugherty's Criminal Conduct

On June 11, 2022, Brendon Daugherty made two telephone calls to the field office of Victim A—a United States Senator representing a state outside the State and District of Minnesota. (PSR ¶ 7.) At approximately 9:56 a.m. Eastern Daylight Time, Daugherty left the following voicemail message for Victim A: "[Victim A], this is someone that's not in your constituency, but I'm just letting you know. You and the Republican Party should be proud that you're pushing me to become a domestic terrorist. Have a nice fuckin' day; can't wait to kill ya." (*Id.* ¶ 8.)

Immediately thereafter, Daugherty called back and left a second voicemail message for Victim A: "I also just wanted to note, thank god the Republican Party is against gun control laws because it would keep guns out of the hands of a person that was disabled and volatile like I am, but you guys are totally against that. So I may actually get to carry out my nefarious goals." (*Id.* ¶ 9.) Victim A's staff promptly reported the voicemails to U.S. Capitol Police. (*Id.* ¶ 10.)

Investigation of the phone number where the calls originated led to Daugherty. Two FBI Special Agents interviewed Daugherty at his residence in a recorded interview. During the interview, Daugherty admitted that he made the calls to Victim A's office, though he took the position that he did not realize he made a threat or intend to carry out any threats. Daugherty said he made the calls because Victim A was "doing a bunch of stupid shit with gun control," and that he wants politicians to "feel a little bit pressured." (*Id.* ¶ 11.)

Investigation did not reveal any evidence that Daugherty intended to carry out the threats, had the ability or a plan to get to Victim A's location, or had access to firearms. Rather, investigation revealed that Daugherty is on the autism spectrum and has a history of making violent threats to people that he does not carry out. For example, in April 2018, staff at a Pearle Vision in Maple Grove notified Daugherty that he owed $80 for a pair of glasses. (*Id.* ¶ 50.) Daugherty responded by telling staff over the phone that he was going to "[expletive] you all up," and that he was going to bring a Molotov cocktail to the store. (*Id.*) The next day, he called back and threatened to burn down the store and hurt employees. (*Id.*)

After being charged in Hennepin County with these threats, Daugherty made a call to eBay's corporate office in San Jose, California, in which he threatened to blow up eBay's building. (*Id.* ¶ 29.) EBay reported the call to the FBI. An FBI agent interviewed Daugherty, who admitted making the threat, but denied any ability or intention to carry it out. (*Id.* ¶ 30.) He blamed his medical condition and stated that the eBay employee was mocking him. The FBI agent admonished Daugherty that "violent threats could land him in jail in the future."

Following Daugherty's arrest on September 14, 2022, the government successfully advocated for his detention pending trial based on the danger to the community posed by the risk that he would make more threats. (Doc. Nos. 8 & 17.) During the six months Daugherty has spent in Sherburne County Jail, he has reportedly gotten on a medication regimen that has been successful in stabilizing his mental health condition.

Daugherty's counsel has been working diligently with a psychologist to evaluate Daugherty and arrive at a treatment plan to help Daugherty manage his mental health condition and stop making threats. The psychologist has proposed a course of outpatient treatment that would include social skills and cognitive-behavioral therapy, family therapy with his parents, assistance with daily living to be provided by Anoka County Human Services, and medication. Daugherty would live with his parents until the treatment program could get up and running. For the reasons set forth below, the government concurs with Daugherty's position that a sentence of time served followed by supervised release with a mental health treatment program is most likely to best serve the interest of community safety going forward. The government proposes that this sentence include

guardrails, including an initial term of home confinement at Daugherty's parents' home, that are directed at ensuring accountability and the success of this mental health treatment program.

## The Presentence Investigation Report

Both parties agree with the facts and the Guideline calculations contained in the PSR. The PSR correctly calculated Daugherty's total offense level as 12 and his criminal history category as III. Daugherty's offense level includes a 6-level enhancement because the victim was a U.S. Senator and the offense was motivated by the victim's status as a government officer or employee and a 4-level reduction because the offense involved a single instance evidencing little or no deliberation. (PSR ¶¶ 20-21.) Daugherty's offense level also includes a 2-level reduction for acceptance of responsibility. (PSR ¶ 26.)

As a result of Daugherty's total offense level of 12 and criminal history category of III, the undisputed advisory Guidelines range is 15 to 21 months' imprisonment. (*Id.* ¶ 107.)

## The Appropriate Sentence

The nature and circumstances of Daugherty's offense conduct were serious, particularly in the current, charged climate in which any threat to a politician could result in violence. Courts have recognized that making threats is harmful to the community, whether or not the defendant ever carries the threats out. *See, e.g., United States v. Capriotti*, 2021 WL 229660, at *5-6 (N.D. Ill. Jan. 22, 2021) ("Threats, particularly those as explicit, graphic, and repeated as those alleged in this case, harm people. They terrorize people. They affect the safety, security and well-being of people. They induce fear.") The

5

government's concurrence in Daugherty's motion for a downward variance in this case should in no way be construed as minimizing the seriousness of Daugherty's criminal conduct.

Rather, the government's position is based primarily on the history and characteristics of the defendant. Daugherty's diagnosed autism spectrum disorder appears to have played a substantial role in this offense and to have impacted Daugherty's ability to control the things that he says. Troublingly, Daugherty's criminal history reflects a series of convictions that arose out of the same kind of threatening conduct, and mental health treatment and medication have not successfully stopped Daugherty's threatening conduct in the past. However, it is not clear that an additional, brief period in BOP custody prior to embarking upon supervised release will be successful in doing so either. To Daugherty's credit, he has the support of his parents, who are willing to have Daugherty live with them while he implements his mental health treatment program. Daugherty will also have the benefit of close supervision by the U.S. Probation Office, and he can be sentenced to an additional term in BOP custody if he fails to abide by any of his conditions of supervised release.

A sentence of time served, which amounts to just over 6 months in Sherburne County Jail, would also reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. The prospect of spending 6 months in jail should provide deterrence to any individuals who may be inclined to pick up their phones and make similar threatening statements to a politician based on their political views.

Finally, a sentence amounting to 6 months' imprisonment followed by 3 years' supervised release, with a structured mental health treatment plan, would be sufficient to avoid unwarranted sentencing disparities. In a recent case involving a defendant who pled guilty to mailing threatening letters to a police officer and to his wife that were quite vile and contained death threats, Chief Judge Patrick J. Schiltz varied downward to sentence the defendant to 10 days in custody. *United States v. Boucher*, Cr. No. 21-184 (PJS), Doc. No. 27 (D. Minn. Feb. 2, 2022). A more serious 6-month sentence in this case would reflect that Daugherty made his threatening calls to a federal official but would also reflect Daugherty's unique personal circumstances. Indeed, in a different case involving threats to a federal official, particularly one in which the threats do not appear to be the result of a mental health condition, or in which the defendant has taken steps toward carrying out the threats, the government would likely advocate for a more substantial sentence appropriately reflecting the application of the § 3553(a) factors in such a case.

Taking into consideration the Sentencing Guidelines, as well as the other factors required to be considered under § 3553(a), the United States respectfully suggests that a downward variance to a sentence of 6 months' imprisonment, with a 3-year term of supervised release including conditions specifically geared toward supporting Daugherty's mental health, appropriately reflects the seriousness of Daugherty's crime while taking into account his mitigating circumstances, promotes respect for the law, provides a just punishment, and protects the public from further threats by Daugherty and others.

**Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant, Brendon Daugherty, to time served, followed by 3 years' supervised release, to include requiring Daugherty to comply with conditions directed toward maintaining his mental health treatment.

Dated: March 20, 2023                    Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*/s/ Kimberly A. Svendsen*

BY: KIMBERLY A. SVENDSEN
Assistant U.S. Attorney